UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCIA BROWN TOLSON,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
    _____/

Case No. 1:15-CV-0012

HON. ROBERT HOLMES BELL

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Marcia Brown Tolson seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial

evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is relevant evidence that a reasonable mind would accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 41 years of age on the date of the Administrative Law Judge's (ALJ) decision. (Tr. 9, 38.) She completed high school, attended some college classes, and was previously employed as a massage therapist, chore provider, and life skills trainer. (Tr. 39–40, 42.) Plaintiff applied for benefits on October 10, 2012, alleging that she had been disabled since June 15, 2010,[1] due to "paraspinal lower lumbar, degenerative disc disease, [and] neck paraspasm." (Tr. 135, 158, 181–82, 266–78.) Plaintiff's applications were denied on February 27, 2013, after which time she requested a hearing before an ALJ. (Tr. 185–205.) On January 15, 2014, Plaintiff appeared with her counsel before ALJ Donna Grit for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (Tr. 34–65.) In a written decision dated February 28, 2014, the ALJ determined that Plaintiff was not disabled. (Tr. 34–65.) Thereafter, the Appeals Council declined to review the ALJ's determination, making it the Commissioner's final decision in the matter. (Tr. 1–6.) Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for

---

[1] Plaintiff's previously-filed application for benefits was denied by ALJ James Prothro on June 1, 2012. (Tr. 111-28.) Plaintiff subsequently amended the alleged onset date to June 2, 2012, the day after the prior decision. (Tr. 12, 365.)

evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

The ALJ determined Plaintiff's claim failed at the fifth step of the evaluation.

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

4

The ALJ initially found that Plaintiff had not engaged in substantial gainful activity since June 2, 2012, her amended alleged onset date. (Tr. 15.) At the second step in the sequential evaluation, the ALJ determined Plaintiff had the following severe impairments: (1) back strain/spain; (2) whiplash injury to the neck with strain; (3) asthma; (4) adjustment disorder with mixed anxiety and depressed mood; (5) generalized anxiety disorder; (6) cluster B personality traits (histrionic); and (7) post traumatic stress disorder. (Tr. 15.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (Tr. 16–18.) At the fourth step, the ALJ found that Plaintiff retained the residual functional capacity (RFC) based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with lifting no more than 20 pounds at a time with frequent lifting of carrying of objects weighing up to 10 pounds. She can sit, stand and walk up to six hours each in an eight-hour workday; and occasionally stoop, crawl and climb ladders, ropes, and scaffolds. The claimant can frequently balance, kneel, crouch and climb ramps and stairs. She needs to avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery, as well as extremes of cold, fumes, dusts, gases, odors, and poor ventilation. The claimant is limited to understanding, remembering and performing simple tasks; making simple work-related decisions; and adapting to routine changes in the work place.

(Tr. 18.) The ALJ also found at the fourth step that Plaintiff could not perform any of her past relevant work. (Tr. 24.)

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given her limitations. *See*

*Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 25,100 jobs in the state of Michigan which an individual similar to Plaintiff could perform. (Tr. 59–61.) These included the positions of light assembler, packager, and line attendant. (Tr. 59–61.) This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988). Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from June 2, 2012, (the alleged onset date) through February 28, 2014, (the date of the decision). (Tr. 26–27.)

## ANALYSIS

Plaintiff's Statement of Errors presents the following claims:

1. The substantial evidence demonstrates the Plaintiff's treating physician opinion was improperly rejected.

2. The ALJ's Residual Functional Capacity (RFC) and credibility determination does not comply with Social Security rules and regulations.

(ECF No. 10, PageID.860.)

### A. Statement of Treating Physician

Plaintiff first claims the ALJ erred in failing to give the opinion of Dr. Richard Roach controlling weight. The Court finds no error.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ

6

must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health & Human Services*, 1991 WL 229979 at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ gives less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

7

Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

On September 10, 2012, Dr. Roach filled out a worksheet regarding Plaintiff's physical RFC. The doctor opined that Plaintiff was far more limited than what the ALJ recognized. Specifically, Dr. Roach stated that Plaintiff could not work, and could only stand and sit for fifteen minutes at a time. (Tr. 599.) Dr. Roach also noted that Plaintiff could never bend, stoop, balance, and raise her arms over her head. Plaintiff would also need to occasionally elevate her legs. (*Id.*)

The ALJ declined to give the opinion any weight, noting that:

> [Dr. Roach's] extreme limitations are not supported by the evidence. The claimant has cervical and lumbar disc bulges (not herniations), and her degenerative changes are mild. No surgery has ever been recommended and on examination, she generally has normal strength with no neurological compromise. In addition, the claimant's effort on examination was questionable at times, and Dr. Roach never accommodates the claimant's asthma.

(Tr. 19.)

The record shows the ALJ provided good reasons, supported by substantial evidence, for discounting Dr. Roach's opinion. For example, on January 4, 2013, Dr. Suresh Ramnath examined Plaintiff and evaluated the results of testing done on Plaintff. Dr. Ramnath concluded that the scans showed only "mild degenerative disk disease with no significant compromise of the foramen and none of the spinal canal. An MR scan of the lumbar spine shows degenerative disk disease at L4-5 with mild bulges at L4-5 and L5-S1."

8

(Tr. 664.) Dr. Ramnath also concluded the results of the tests did not indicate that Plaintiff needed surgery. (*Id.*) This is consistent with the conclusion of Dr. Robert Oostveen who concluded in September 2011 that Plaintiff had mild dextroscoliosis of the midthoracic spine, but found no other acute radiographic abnormality. (Tr. 420.) Additionally, several of Plaintiff's physicians believed Plaintiff may have been exaggerating her symptoms. (Tr. 392-93, 407, 608.) The ALJ's reasons for disregarding Dr. Roach's opinion are thus supported by substantial evidence.

Plaintiff relatedly claims that the ALJ was required to recontact Dr. Roach "for clarification of the reasons for the opinion" pursuant to SSR 96-5p. (ECF No. 10, PageID.864.) This argument is patently meritless. In *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269 (6th Cir. 2010), the Sixth Circuit held that there were "two conditions that must both be met to trigger SSR 96-5p's duty to recontact: 'the evidence does not support a treating source's opinion . . . and the adjudicator cannot ascertain the basis of the opinion from the record.'" *Id.* at 273 (quoting Soc. Sec. Rul. 96-5p, 1996 WL 374183, at * 6 (July 2, 1996)). An unsupported opinion alone does not trigger the duty to recontact. *Id.* The duty is not triggered where, as here, the ALJ did not reject the physician's opinions because they were unclear; instead, she rejected the opinions because they were based on Plaintiff's subjective complaints and were not supported by objective medical evidence. *Id.* "'[A]n ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status, not where, as here, the ALJ rejects the limitations recommended by that physician.'" *Id.* at 274 (quoting *Poe v.*

9

*Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 n. 3 (6th Cir.2009)). Where the duty is not triggered, it is not violated. *Id.* Accordingly, Plaintiff's claim of error fails.

Plaintiff tacks on an unrelated argument to this claim of error, arguing that the ALJ violated SSR 96-8p in failing to evaluate whether she is capable of a competitive work schedule. Specifically, Plaintiff claims the "ALJ slanted and even outright misstakes the evidence in her conclusion." (ECF No. 10, PageID.865.) Plaintiff does not develop this argument, however, beyond these conclusory remarks. Plaintiff has thus waived this claim. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").

### B. RFC and Credibility Determinations

Plaintiff next claims that the ALJ's determination Plaintiff was capable of performing light work is unsupported by substantial evidence because the RFC did not account for all of Plaintiff's severe impairments as well as Plaintiff's use of a cane.[3] The Court disagrees.

Plaintiff's argument improperly collapses multiple steps of the sequential analysis. The finding of a severe impairment at step 2 of the sequential analysis is a threshold determination. The finding of a single severe impairment is sufficient to require continuation

---

[3] Plaintiff's statement of errors alludes to a credibility argument, but the body of Plaintiff's brief presents no argument regarding how the ALJ may have erred in considering Plaintiff's credibility. Any argument regarding credibility has thus been waived. *See McPherson*, 125 F.3d at 995-96.

of the sequential analysis. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987). The ALJ found at step 2 of the sequential analysis that Plaintiff had severe impairments. (Tr.15.) The Sixth Circuit considers the step two severity regulation as a "de minimis hurdle" intended to "screen out totally meritless claims." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) and *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)); *see also Corley v. Comm'r of Soc. Sec.*, No. 98–3785, 1999 WL 970306, at * 1 (6th Cir. Oct.13, 1999) ("The ALJ did not err in finding that a severe impairment can exist without finding that a significant limitation and disability exist."). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir.2007) (citation and internal quotation omitted).

RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. § 404.1545(a)(1); *Griffeth*, 217 F. App'x at 429. The administrative finding of a claimant's RFC is made between steps 3 and 4 of the sequential analysis and it is applied at steps 4 and 5. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity. We use the residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ found that Plaintiff retained the RFC for a limited range of light work. (Tr. 18–24.) The ALJ carefully considered the evidence related to Plaintiff's back impairments. (Tr. 19–22.) Plaintiff has not shown that the restrictions that the ALJ included in her factual finding

regarding Plaintiff's RFC, such as limiting Plaintiff to light work with no more than twenty pounds and only frequently lifting and carrying objects weighing ten pounds, and occasional stooping and crawling failed to adequately take into account Plaintiff's functional limitations stemming from the complained of impairments.

Finally, Plaintiff claims that substantial evidence does not support her RFC for light work because she uses a cane and she should more properly be placed under a sedentary work category. In support, Plaintiff claims the ALJ "never acknowledges in her decision that Plaintiff clearly uses a cane and never makes any effort to incorporate those functional limitations in the RFC. The fact that Plaintiff uses a cane is conveniently never discussed." (ECF No. 10, PageID.867). To the contrary, the ALJ expressly discussed the use of a cane in her decision, noting that in "September of 2013, the claimant went to a medical equipment supply facility and ordered a cane for herself. She was a 'walk-in' customer and there is no indication that she had a prescription for this cane." (Tr. 23.)

The record shows that Plaintiff purchased a cane for twenty dollars on September 13, 2013, but it does not indicate that Plaintiff was prescribed a cane; thus, Plaintiff provides only her own opinion that she needs the use of a cane to ambulate. (Tr. 363.) Moreover, there is little indication in the record that Plaintiff ever used the cane. Plaintiff's use of a cane is referenced in an assessment written by Dr. Roach, though the assessment does not indicate that the cane was prescribed.[4] (Tr. 814.) Plaintiff's brief states

---

[4] There are several references in the medical record to a four-wheel walker, but in each instance, Plaintiff was told to use a walker "as directed"; there is no indication that Plaintiff ever

that when she does not use the cane, she loses balance and falls. (ECF No. 10, PageID.867.) But the relevant portion of the administrative hearing transcript does not support this contention. Plaintiff testified that she has fallen, but she made no mention of a cane. (Tr. 43.) Other records indicate that Plaintiff was able to ambulate without assistance, noting for example, that while Plaintiff had a tentative gait, she was able to walk on her toes and her heels. (Tr. 664.) Thus, substantial evidence supports the ALJ's determination. Accordingly, Plaintiff's second claim of error fails.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.

Dated: December 16, 2015 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE

---

possessed a walker, let alone that she used it. (Tr. 644, 660, 746.) In any event, by failing to argue the point, Plaintiff has waived any claim of error.